Mr. Sundel, for the Petitioner, Mr. Smith for the Respondent. Mr. Sundel, good morning. Good morning, Judge. If you'll proceed. Thank you. May it please the Court, The judge below denied a U.S. citizen the right to attend a U.S. criminal proceeding in the United States. Can I stop you right there? Can I stop you right there, Mr. Sundel? I don't think it's a criminal proceeding. It's a military tribunal of an enemy combatant while the war is still going on. And I guess my question is, let's assume that we get past the procedural stuff, and we have to decide whether there's a qualified First Amendment right here. So we're kind of not as far to the end of the analysis as deciding how we would apply a qualified First Amendment right, narrow tailoring, etc. But we are past the procedural stuff. Is there a qualified First Amendment right for a member of the public to watch a military tribunal of an enemy combatant while the war is still going on? And the answer to that has to be an inquiry into history and experience. And in the Revolutionary War, we had such tribunals. And my understanding is they weren't open to the public. Andrew Jackson had such tribunals. My understanding is they weren't open to the public. In World War II, we had such tribunals. And my understanding is they weren't open to the public. So I guess my question to you is, during that timeframe, it's 170 years or so, the first 170 years of the country. Do you know of any examples that you can give us where a military tribunal of an enemy combatant, foreign enemy combatant, during the war, where a court held that a member of the public has a First Amendment right to watch that, even if it's unclassified, a First Amendment right to watch that? Your Honor, I would submit two things on that issue. The first is that the closest analogy is other military tribunal proceedings, such as courts martial. And courts martial, in fact, have no history of being closed proceedings. Can you tell me why that's the best analogy and not other military tribunals of enemy combatants while the war is still going on? Well, as far as other military commissions, I believe that Civil War military commissions were open. I don't know of any indication that they were closed. Now, granted, this court and the Supreme Court have acknowledged that there are differences, subject matter differences, to some degree, with Civil War commissions. Can I interrupt for a second so that I can ask some questions about what you just said? The Civil War commissions would not have been foreign enemy combatants. They would have been American citizens. That seems like a difference. But in addition, if you're talking about the Booth conspirators and the Andersonville war crimes trials, those happened after the war had ended. I know there were some during the war. But can you talk to me about them and also why the distinction between al-Qausi being a foreigner and the Civil War concerning American citizens, why that distinction shouldn't matter? Well, the First Amendment right, the public's First Amendment right to attend is sensitive to circumstances like that. But there's nothing about the nature of the defendant that any court that I'm aware of has ever pointed to to say that there is not a First Amendment right to attend. It's the nature of the proceeding. It's the need and the right of the citizenry to monitor government activities, particularly with respect to proceedings like this that are judge alone. Military commissions, whatever they may be, can result in a death sentence. So whether or not they're technically criminal proceedings, military proceedings have always been reviewed as criminal proceedings. The due process review standard is that of a criminal proceeding. This court has acknowledged that the military commissions here, because most of them are death eligible proceedings, are subject to the appropriate standard of review for a death eligible proceeding. Mr. Sindel, I'm not sure that I agree with you that the same due process rights, the exact same due process rights that apply to a federal criminal trial also apply in a military tribunal of an enemy combatant, of a foreign enemy combatant while the war is still going on. But even if they do, we're not talking about the defendant's due process, right? We're talking about the public's First Amendment right to watch. And I can't think of... May I come in at that point? Yes, please. Yes, please. I happen to agree with the line of questioning my new colleague has presented. But I have a precursor question. Why do you have prudential standing to sue as a member of the public? Petitioner is a member of the public. Petitioner has no, has never... That's you, right? It's me. I just feel odd referring to myself in the first person. Well, because if you were counsel to some defendant before the commission, you would have an entirely different position. But I'm trying to understand. You are challenging the government's policy. The government's policy is that they do not want to open these proceedings. Right? Yes. And they don't want to make an exception because any individual has a clearance. So you're challenging the government's policy, right? No, the government has never... Wait a minute. You're challenging the government's policy. And you're purporting to be a member of the public. But you're not a member of the public. You're indeed a government lawyer. If you were right that any government lawyer could step out of his or her government position and sue the government as a member of the public in a situation like this, then any lawyer in the National Security Division could be calling, could be in court, challenging the National Security Division's position on this case. Right? Your Honor, I have no official role in this case whatsoever. So I have not waived my status. I'm not suggesting to you. But if you were right, any lawyer in the Justice Department could appear in this court asserting the right as a member of the public, challenging the Justice Department. Right? Yes. I do not believe that accepting government employment renders me not a member of the public for all purposes. For certain purposes, you're certainly a member of the public. There's no question. If you made a speech on a certain subject, then there would be a question of First Amendment protection and a sort of practical accommodations made. But you're not doing that. You're suing, as a member of the public, the government. For my First Amendment right to attend. But if that's true, any lawyer in the Justice Department or all the lawyers in the Justice Department could come in challenging the position of the National Security Division. Right? On the grounds that they're members of the public. I think that is correct. In their individual capacity, under their First Amendment right as members of the public, yes, I think that is right. They could. I do not believe that the status of government employment renders the First Amendment inapplicable to someone. Counsel, you're overstating. I didn't say the First Amendment is inapplicable. The question is, in this context, can you rely on the public's First Amendment rights? Why are you bringing this case? What's the reason? I'm sorry? Is there a back story here? There is not a back story. I had an interest in attending the proceedings. And I sought to attend. And I was told that I was not allowed to attend. And I believe that that's a violation of my constitutional right to attend public proceedings. The government has always treated military commissions in general and these proceedings specifically as public. There were media advisories. There's transmission of the hearings to remote viewing locations in the United States. So I don't believe that the Supreme Court looks to the nature of the proceeding to determine if there is a public right to attend. It does not look to the type of evidence that is being presented, except with respect to whether there is a compelling interest. So, yes, I believe that a government employee who does not have an official role in a proceeding retains his or her First Amendment right to attend public proceedings. And I believe — It's not just attend. It's also to challenge the government's position on this. Well, one comes — I realize my time is up, if I can continue answering. One goes hand in hand with the other. If there is a right to attend, then the case law is crystal clear that there must be a mechanism to challenge a closure. If there is no right to attend, for example, if it's not a public proceeding, or if you are not a member of the public. And with respect to member of the public, if I could just briefly say, the Military Commission rules of procedure, just like the rules of courts martial procedure, define member of the public quite broadly. And, in fact, the courts martial rules of procedure, which the court below, CMCR in a different case, has acknowledged are essentially identical to the Military Commission rules, basically say, even government employees, specifically say, even government employees are members of the public. So, as far as the procedures relevant to these proceedings are concerned, the government, the procedures themselves recognize a government employee still having the First Amendment right to attend public proceedings, which is all I am seeking to vindicate here. But now, Mr. Sundell, I thought that you're just not an unqualified member of the public. I thought your security clearance is, you're arguing anyway, gives you special status as a member of the public to have access to the closed portions of this hearing, which even the public is not entitled to. Not exactly, Your Honor. The argument is that the respondent had the burden of demonstrating a substantial probability of harm to its compelling interest. And with respect to the judge's determination of substantial probability of harm, a relevant consideration for the judge is that respondent has itself said on numerous occasions over the last 10 years that petitioner does not represent a risk to national security. And in fact, petitioner's access to national security information is entirely consistent with national security interest. It's not that the clearance gives anyone a special status. It's the fact that the government has repeatedly made the risk determination in favor of respondent that was a relevant consideration with respect to determining if the respondent had carried its burden of showing substantial probability of harm. Respondent could have point, theoretically could have pointed to a whole bunch of things to demonstrate substantial probability of harm. It pointed exclusively to need to know, which is irrelevant because it's a generic unspecified risk. In response to the respondent's seeking to close, petitioner said, I am not a risk. And one of the things that you should consider in determining if I am a risk is respondent's own view that I am not a risk. All right. We'll give you a couple minutes and reply. Mr.  Smith. Thank you, Your Honor. It may please the court. Jeffrey Smith for the United States. As the panel's questions suggest, there's an incongruity here between what Mr. Sundell claims, which is a First Amendment right to attend, and the fact that he only has this right, in his view, because of a security clearance he has as a government employee. Under this court's precedent in Diab, a classified hearing can be closed to the public. And once a hearing is closed to the public, there is no First Amendment right of attendance. Mr. Sundell is advancing the argument that the government has to demonstrate, you know, over a strict scrutiny standard that each individual person who wishes to attend is a security risk. And that has never been the standard. It's not a workable standard, and it's a standard that's entirely inconsistent with national security. Under that legal rule, anyone that the government, perhaps mistakenly, not in this case, but perhaps in another case, the government mistakenly cleared someone like Edward Snowden, that person could go around to every court and get every classified transcript, get every classified filing, and do whatever he wanted with it. And that is a huge risk. That is why the government has a need to know compartmentalization within the executive branch. Thank you very much. Counsel. Yes. My concern for one thing is why the appellant in this case has prudential standing. If he does have prudential standing, then any of your colleagues in the National Security Division could bring the same case against you and against the policy of the government. Yes, I think that's right. I mean, I think anyone who attempted, who claimed that they wanted to attend a hearing would be able to do that under the theory that he's advancing. Yes. And then that would include anyone in the national security. I got the hint in your brief that this was incongruous, which the other way of phrasing that is prudential standing. Do you believe he lacks prudential standing to sue as a member of the public? Because he is- You're on. Go ahead. I'm sorry. I mean, in light of Lexmark and this court's case law interpreting Lexmark, it's not clear whether prudential standing is the right analysis. I think it may be that it's a merits question that the court should only reach, assuming that it finds jurisdiction and there is no jurisdiction here for other reasons. I'm not sure if that's a satisfactory answer, but I'm not sure that I can answer it beyond that. I agree that the underlying concern you raise is a valid one. I just think it may be a merits question. Why is that? Well, why wouldn't you- Why is it a merits question? Would you understand his position that any lawyer in your division could take the same position as he's taking, attacking your representation and the policy of the government? You understand that? That's his implication of his position. Yes. You don't think that raises a standing question? Yes. Well, again, this is a somewhat different answer. To the extent that the question is whether the injury is concrete and particularized as to him or whether it's so generalized, which may be what you're getting at, that would be- That's an article one question- article three question. I agree. We're talking about prudential standing. I'm not asking whether he has injury in fact. Of course he has injury in fact. Because you have to assume the merits on that. But prudential standing asks the question, is this individual entitled to make this claim? And you have to consider if that's true, then any lawyer in the Justice Department could have raised the same claim, challenging the Justice Department's position. You understand that? Yes, I do. And you think he has standing? Such a lawyer would have standing to do that? I think it's- I mean, I think it's probably a merits question, Your Honor. I don't see what- okay. I don't see that as a merits question at all. Why do you say it's a merits question? I mean, that's how I read Lexmark and this court's case in Crossroads grassroots policy, which refers to the zone of interest tests, but- No, but that's under APA. This is a constitutional prudential standing question. That's entirely different. They rarely come up. But you can't look at APA on that because, as I once said, that's statutory standing. And I was gratified that I was quoted by the Supreme Court on that. That APA is entirely different. There are few cases on constitutional standing. But it seems to me this falls within that category. The question is whether a lawyer in the Justice Department or Defense Department can challenge government policy with respect to closing the hearing, notwithstanding the government is taking an opposite position. Okay. I think I understand. What happened? He froze. I think Ann, I hope Ann can take care of that. I don't, again, it's debatable whether it is a merits question. Of course. I'm sorry. My connection is. Sorry, Your Honor. We can hear you now. Oh, okay. But I would just like to point out that there's another, there are two other jurisdictional problems with this case. One is that this doesn't fall within the statutory jurisdiction that Congress has granted. The statute that governs this court's appellate review over the military commission system is 10 U.S.C. 950G. And that statute grants this court with jurisdiction only over final judgments issued by a military commission and approved by the convening authority. And further restricts the court's review to the findings and sentence of the military commission. It's clear from both the text and the context that this is a reference to military commission convictions. That's what the court is granted jurisdiction over by Congress. And the order issue here. Excuse me, counsel. You would agree that Mandamus could lie? It may be the case that Mandamus would lie. I don't think the court needs to reach that because Mr. Sundell has not sought Mandamus and Mandamus would not be appropriate, but it may be. I agree with you. For instance, if the commission rejected a participant on the grounds he was Catholic, there was certainly Mandamus would lie, wouldn't there? Wouldn't it? I'm sorry. Yes, I believe it would. Yes. But your answer is he didn't seek Mandamus. Well, that's my answer is he didn't seek Mandamus. Mandamus would not be appropriate because he doesn't have a clear and indisputable right to relief here. And there may, it's possible that there are, and this was something that we'd have to, we need more briefing on, but there may be alternative remedies as well, to the extent that he seeks a transcript from the Department of Defense. So, and in any case, I see my time is almost up. This case, this court doesn't have jurisdiction under 950G, doesn't have appellate jurisdiction. And this case is also not right for reasons that we put in our brief. So if the court doesn't have any questions on that, I would stand on our arguments in our brief and ask that the court dismiss the petition. All right. If there are no more questions, then, Mr. Sundell, why don't you take two minutes and reply? Thank you, Your Honor. Briefly, with respect to jurisdiction, the jurisdictional provision is 950G-A, which is a standard finality provision. As this court has said with respect to the Hobbs Act, finality provisions that are analogous to 1291 are appropriately viewed through the collateral order doctrine. And challenging a closure order on constitutional grounds is a classic collateral order review case in this circuit. Mr. Sundell, the 1291 talks about final decisions. 950G talks about final judgments. Judges make decisions all the time that are not judgments. And Congress made a choice to not use the word decision, but to use the much narrower word judgment in 950G. So I assume that I don't think we should read judgment to mean decision. Is there a way for you to still win, to still have jurisdiction here? Why should we think of what happened to you as a judgment? Because the phrase judgment in 950G-A is simply intended to recognize the unique way in which military cases conclude our final. So military cases writ large are only final after the convening authority approves the findings and sentence. That explains why Congress would have added the phrase after the convening authority approves it. But it doesn't explain why Congress chose to use the word judgment instead of the word decision. And you're asking us to define congressional intent. But I'm asking you, usually the text is our guide to intent. Why is the text not the guide to intent here? We agree that the text is the guide. And the text clearly demonstrates Congress's desire for military commission review to be funneled into this court. There's really no question that Congress did not want district courts and other circuits reviewing the judgment of military commissions. And that is what would happen if review is not under 950G. In fact, the first hearing in this case was in Maryland. So we would be bringing in yet another district and circuit to review a military commission judge's order. Excuse me, counsel. You don't have any decision by the convening authority in this case. Even if we were to read judgment as you would like us to read as decision, you don't have any reaction from the convening authority, do you? The final judgment is read via the collateral order doctrine would include exactly this claim. Because this claim is a classic collateral order. Even assuming that you could stretch, double stretch judgment to make a decision and get a collateral order, doesn't the statute require the convening authority to approve the position? That's merely a recitation of the statutory scheme for military decisions. So adding as approved by the convening authority is simply an acknowledgment of when those decisions are in fact final in the context of military judgment. It avoids the confusion of when the judge closes the case in a military commission or a court martial. Normally you're looking at a criminal proceeding. That would be the end. But all that language recognizes is like administrative board decisions that are not final until the secretary approves them. Such is the case with military court martial and commission judgment. They're not in fact final until they go through the convening authority. So the statute, that language doesn't add anything to the process. It doesn't add a separate requirement. It simply highlights that that is in fact what the statute means by final. Otherwise there could be confusion for anyone who's not familiar with the military process for finalities. So I could just very, very briefly touch on a couple of things. Federal defenders always frequently file in opposition to the government. That's a necessity of their independent role. My office. You're like a public defender, right? Paid by the government. Certainly, if you were representing a person who claimed a right, your posture would be entirely different. But as a public defender, I do not lose my individual First Amendment right to attend a public proceeding. Are you asserting any superior right because you're a public defender? No, no, no, no, absolutely not. I'm just distinguishing your hypothetical with an MSD employee. Oh, wait a minute. In other words, you are in a different position than a lawyer in the National Security Division who disagrees with the policy. Well, I certainly think that there is a much greater opportunity for the government to restrict the personal activities of a lawyer whose job it is to represent the government, as opposed to a lawyer whose job it is to oppose the government. So if there's a need to distinguish with other government lawyers who should not be allowed to pursue this sort of a claim, that is certainly a recognized distinction. I only technically work for the government. My job, in fact, is to oppose the government. And if there is any need for that distinction to carry over into a First Amendment right, it certainly should. Diab was a civil case, and it itself recognized that national security concerns, national security equities, and the need to close proceedings or to exclude evidence in a criminal case is very, very different. And the government is not entitled to the same level of deference. This court has also recognized... But let me come back to your point, counsel. You're not arguing that you never in your brief suggested you had a particular right that no government employee, other government employee, would have because your general job was to defend persons charged under the military commission? No, no, you're... Governmental function right. That's a different claim. No, no, Your Honor. If that's what it sounded like, I'm sorry that I misspoke. All I'm saying is that if some aspects of government employment infringe on the First Amendment right to attend as a member of the public, then there would be a distinction with government employees whose job it is to oppose the government as opposed to represent the government. I'm not conceding that there is an appropriate limitation on that right, but if there is, then it should be distinguished based on the role within the government. I realize I've gone way past my time. I thank the court, and if there are no other questions... Any more questions? All right. Thank you, gentlemen. Go ahead, Judge Silberman. Did you have a question? No, I did not. Oh, all right. Okay, gentlemen, the case is submitted.
judges: Henderson, Walker, Silberman